UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA MUNGUIA, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>BEKINS VAN LINES, LLC, et al.,<br><br>        Defendants<br>_____<br><br>WILLIAM WRIGHT, et al.<br><br>        Plaintiffs,<br><br>  v.<br><br>BEKINS VAN LINES, LLC, et al.<br><br>        Defendants.<br>_____/ | CASE NO. 1:11-cv-01134-LJO-SKO<br><br>Consolidated with case no. 1:11-cv-01675-LJO-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFFS WILLIAM WRIGHT AND JOANNE WRIGHT'S MOTION FOR CHOICE OF LAW BE GRANTED AS TO THE ISSUE OF COMPARATIVE FAULT**<br><br>**OBJECTIONS DUE: 21 DAYS** |

## I.  INTRODUCTION

On July 23, 2012, Plaintiffs William Wright and Joanne Wright (the "Wrights") filed a Motion for Choice of Law seeking to establish California law as applicable in this case. (Doc. 31.) On August 1, 2012, Plaintiffs Sheila Munguia ("Munguia") and Jordan Harness ("Harness" or, collectively, "Plaintiffs") filed a Joinder in the Wrights' Choice of Law Motion.  (Doc. 33.) Defendants Bekins Van Lines, LLC ("Bekins") and the Estate of Myron Bojszuk ("Bojszuk" or, collectively, "Defendants") filed an opposition on August 13, 2012, and the Wrights filed a reply brief on August 22, 2012. (Docs. 34, 35.)

The Court has reviewed the parties' briefs and supporting documents and determined that this matter is suitable for decision without oral argument pursuant to the Local Rules of the United States District Court, Eastern District of California, Rule 230(g). For the reasons set forth below, the Court RECOMMENDS that Plaintiffs' Motion for Choice of Law to establish California law as applicable in this case be GRANTED concerning the issue of comparative fault.

## II. BACKGROUND

**A.  Procedural Background**

On June 8, 2011, Plaintiffs Munguia and Harness filed a complaint in Fresno County Superior Court against Defendants; the action was removed to this Court on July 7, 2011, by Defendants in case no. 1:11-cv-01134-LJO-SKO. (Docs. 1-3.) On July 12, 2011, Defendants filed an answer and counterclaim; the counterclaim was answered by Munguia and Harness on July 29, 2011. (Docs. 9-11.)

On September 29, 2011, the Wrights filed an action against Defendants in the United States District Court, Eastern District of California, Sacramento Division. A Notice of Related Action was filed on October 3, 2011, informing the Court that the Wrights' action was related to the action brought Munguia and Harness. On October 4, 2011, the Court related the two actions and reassigned the case to this Court in case no. 1:11-cv-01675-LJO-SKO. (Docs. 1, 2, 6, 7.) On November 8, 2011, Defendants filed an answer and counterclaim in the Wrights' action. (Docs. 11, 12.) On November 22, 2011, Defendants and the Wrights filed a stipulation and proposed order to consolidate the two actions; on the same day, the Court ordered the actions consolidated and closed case no. 1:11-cv-01675-LJO-SKO. (Docs. 14, 15.) Accordingly, case no. 1:11-cv-01134-LJO-SKO became the lead case.

On March 21, 2012, Plaintiff Harness filed a stipulation and proposed order for good faith settlement indicating Munguia and Harness had settled and that Defendants would dismiss with prejudice the counterclaim against Harness; the stipulation was approved by the Court the same date. (Docs. 27-28.)

On July 23, 2012, the Wrights filed the instant motion for choice of law. (Doc. 30.) Munguia filed a joinder to the Wrights' motion. (Doc. 33.) On August 13, 2012, Defendants filed an opposition, and the Wrights filed a reply on August 22, 2012. (Docs. 34-35.)

**B.   Factual Background**[1]

On January 13, 2011, Defendant Bojszuk was driving a loaded 2003 Peterbilt tractor-trailer for Defendant Bekins.[2] Bojszuk began his journey in Sacramento, California, and was heading to Salt Lake City, Utah. At approximately 7:05 p.m., while traveling eastbound on Interstate 80 in Elko, Nevada, Bojszuk failed to negotiate a curve in the road and drifted into the median, then swerved and overcorrected the vehicle, causing the tractor-trailer to overturn. The tractor-trailer came to rest in a north/south direction, blocking all lanes on eastbound Interstate 80, with the undercarriage of the truck facing oncoming eastbound traffic. Bojszuk was semi-conscious immediately following the accident. Although vehicles on both sides of Interstate 80 purportedly stopped to render assistance, Bojszuk died at the scene.

Plaintiff Harness, who was operating a motor vehicle traveling eastbound on Interstate 80 with Munguia as a passenger, collided with the tractor-trailer, allegedly causing severe injuries to both Harness and Munguia. Shortly thereafter, a motor vehicle operated by Plaintiff William Wright, with his wife Plaintiff Joanne Wright as a passenger, also collided with the underside of the overturned tractor-trailer, allegedly causing severe injuries to the Wrights.

The action brought by Munguia and Harness alleges claims for negligence, negligence per se, and negligent entrustment. The Wrights' action alleges claims for personal injury and loss of consortium. Defendants' counterclaims allege claims for indemnification and contribution.

---

[1] The factual background was compiled from the Munguia and Harness complaint, the Wrights' complaint, Defendants' counterclaims, and the Joint Scheduling Report submitted on January 26, 2012, in preparation for the scheduling conference held on February 7, 2012. (*See* case no. 1:11-cv-01134-LJO-SKO, Doc. Nos. 1, 2, 10, 13; case no. 1:11-cv-01675-LJO-SKO, Doc. Nos. 1, 12.)

[2] It is disputed whether Bojszuk was an employee of Bekins or an independent contractor.

### III.     DISCUSSION

**A.     The Wrights' Motion is Limited to Issue of Comparative Fault**

While the Wrights' Motion for Choice of Law seeks to establish California law as applicable in this case (Doc. 31), Defendants correctly indicate that the Wrights' request is over broad and premature to the extent that may seek to establish California law as the only applicable law for all potential issues in the case. Defendants note that the Wrights' motion focuses only on the issue of potential conflicts of law concerning the comparative fault systems between the three potentially affected jurisdictions – California (where the Wrights reside), Nevada (where the accident occurred), and Illinois (the principal place of business of Bekins and where Bojszuk resided prior to his death). In their reply, the Wrights concede that their motion pertains only to the issue of comparative fault and, as such, this is the only issue the Court will consider.

Additionally, Defendants contend that the Wrights' motion improperly seeks to confirm that California law should apply because California courts only consider applying a foreign state's law if a party files a choice of law motion and persuades the court that the law of a foreign state is applicable. However, the Court notes that the parties had indicated prior to their scheduling conference that there was a disputed legal issue of whether California or Nevada substantive law applied in this action. (*See* Doc. 21, 7:26.) Further, although Defendants have not filed a separate motion for choice of law, they assert that Nevada's statutory comparative fault law, not California's common law comparative fault law, is applicable here. (Doc. 34, 3:10-10:4.) As such, there is a dispute as to which state's law governs the issue of comparative fault in this case, the resolution of which may assist in the parties litigating this action. As the issue has been fully briefed, the Court finds it appropriate to consider the question of choice of law as it relates to comparative fault.

**B.     Defendants' Objections and Motion to Strike Declaration of Roger A. Dreyer and Exhibits Attached Thereto**

Defendants object to and move to strike the Declaration of Roger A. Dreyer and supporting exhibits (Doc. 32) pursuant to the Federal Rules of Evidence, Rule 411, contending that the exhibits only serve to advise the Court that Defendants have insurance coverage and that such evidence is improper and irrelevant to the issues raised in the motion for choice of law. (Doc. 34-1.) The

Wrights concede that withdrawal of the declaration is appropriate, especially since Defendants are not asserting that Illinois law should apply in this case. (Doc. 35, 8:11-15.) Accordingly, the Declaration of Roger A. Dreyer and accompanying exhibits should be STRICKEN.

**C.    Legal Standard for Choice of Law**

In a diversity action, a federal court sitting in California must apply California choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000); *Marsh v. Burrell*, 805 F. Supp. 1493, 1496 (N.D. Cal. 1992). California courts decide choice of law questions by means of the "governmental interests" analysis. *In re Yagman*, 796 F.2d 1165, 1170 (9th Cir.1986); *Marsh*, 805 F. Supp. at 1496. This choice of law analysis embodies the presumption that California law applies unless the proponent of foreign law can show otherwise. *Browne v. McDonnell Douglas Corp.*, 504 F. Supp. 514, 517 (N.D. Cal.1980).

California's governmental interests analysis of choice of law conflicts involves a three-step process. *See Abogados*, 223 F.3d at 934; *McGhee v. Arabian American Oil Co.*, 871 F.2d 1412, 1422 (9th Cir.1989); *see also Hurtado v. Superior Court*, 11 Cal. 3d 574 (1974); *Reich v. Purcell*, 67 Cal.2d 551 (1967). First, the court must determine whether the substantive laws of California and the foreign jurisdiction differ on the issue before it. *See Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1196 (9th Cir.1982); *Marsh*, 805 F. Supp. at 1496. Second, if the laws do differ, then the court must determine what interest, if any, the competing jurisdictions have in the application of their respective laws. *Liew*, 685 F.2d at 1196; *Marsh*, 805 F. Supp. at 1496; *Hurtado*, 11 Cal. 3d at 581. "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a false conflict and the law of the interested jurisdiction is applied." *McGhee*, 871 F.2d at 1422 (citation and quotation marks omitted). On the other hand, if more than one jurisdiction has a legitimate interest, "the court must move to the third stage of the analysis, which focuses on the comparative impairment of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be the more impaired if its law were not applied." *Id.* (citation and quotation marks omitted); *see also Abogados*, 223 F.3d at 934.

D.   **Analysis**

   **1.   States with Potential Interests in this Action**

The Wrights are citizens of the State of California. (Case no. 1:11-cv-01675-LJO-SKO, Doc. 1 ("Wrights Complaint"), ¶ 2.) Munguia was a resident of the State of California at the time of the accident, and Harness was a resident of the State of Nebraska when the events of the accident occurred. (Case no. 1:11-cv-01134-LJO-SKO ("Munguia/Harness Complaint"), Doc. 2, ¶¶ 1-2.) Bekins is a limited liability corporation with its principal place of business in the State of Illinois, and Bojszuk was a resident of the State of Illinois at the time of his death due to the accident. (*See* Munguia/Harness Complaint, ¶¶ 3-4.)

The accident occurred on January 13, 2011, in the State of Nevada, and Bojszuk began his trip in the State of California. (*See* Munguia/Harness Complaint, ¶¶ 13-19; Wrights Complaint, ¶¶ 4-6.)

The Wrights are residents of California and, as such, contend that California's pure common law comparative fault law applies. Defendants, however, assert that since the accident occurred in Nevada, then Nevada's statutory comparative fault law should apply[3]

   **2.   California and Nevada Law Conflict as to Comparative Fault**

As noted above, to determine considering whether there is a choice of law conflict, the Court must first find that the substantive laws of California and Nevada differ on the issue of comparative fault. *See Liew*, 685 F.2d at 1196. "There is obviously no problem where the laws of the two states are identical." *Hurtado*, 11 Cal.3d at 580. A conflict, however, arises when the laws are not identical. *See id.*

California has a "pure" comparative fault system that allocates fault in proportion to each parties' degree of fault regardless of who is more at fault. *See Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 813 (1975) (establishing that the system of comparative fault used in California shall be one for "which liability for damage will be borne by those whose negligence caused it in direct proportion

---

[3] Although Defendants mention that Illinois statutory comparative fault law may also apply, their opposition brief asserts that Nevada law is applicable to the issue of comparative fault and Defendants do not set forth how Illinois law may apply. (*See, generally,* Doc. 34, 3:10-10:4 (asserting that Nevada's statutory comparative law should be applied in this action).) As such, the Court only considers the applicability of California and Nevada law to this action.

to their respective fault"). In other words, California's pure comparative law system establishes that a plaintiff can recover whatever percentage of fault, however small, is apportioned to any defendant.

Nevada, on the other hand, has a modified comparative fault system, which requires that the plaintiff not be more at fault than the defendant to recover. *See* Nev. Rev. Stat. § 41.141 (2012) (establishing that "the comparative negligence of the plaintiff or the plaintiff's decedent does not bar a recovery if that negligence was not greater than the negligence or gross negligence of the parties to the action against whom recovery is sought"). In other words, under Nevada's comparative fault system, a plaintiff can only recover if he or she was less than 50 percent at fault for the injury.

Accordingly, California and Nevada laws concerning comparative fault differ and conflict with each other.

### 3. California and Nevada Have Competing Interests in the Application of Their Respective Laws

The Court must next determine, if the laws do differ, what interest, if any, the competing jurisdictions have in the application of their respective laws. *Liew*, 685 F.2d at 1196. Here, California, the forum state in which this Court sits, has an interest in seeing that its residents are compensated for their injuries and that its laws apply as to Plaintiffs' recovery of damages. *See Hurtado*, 11 Cal.3d at 581; *see also Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1182 (2007) (stating that California has a "legitimate government interest" to insure that "California residents injured in traffic accidents in other states . . . be compensated for their injuries and not become dependent on the resources of California for necessary medical, disability, and unemployment benefits").

Nevada's interest, on the other hand, arises from the fact that the accident occurred in Nevada and Nevada has a presumptive interest in controlling the conduct of persons on its roadways. *See Castro*, 154 Cal. App. 4th at 1180 (stating that when an accident and injury occur in a foreign state, that state has "a presumptive interest in controlling the conduct of those persons who use its roadways, absent some other compelling interest to be served by applying California law").

As such, California and Nevada having competing interests to insure the application of their respective laws.

**4.    California's Interest Would be More Impaired if Its Law is Not Applied**

Having determined that more than one jurisdiction has a legitimate interest, the Court focuses on the comparative impairment of the interested jurisdictions and identifies and applies the law of the state whose interest would be the more impaired if its law were not applied. *McGhee*, 871 F.2d at 1422.

Plaintiffs contend that the place of the accident is not the appropriate choice of law jurisdiction. Plaintiffs assert that the primary interest a state has in limiting recovery and damages in a personal injury or wrongful death case is to protect its resident defendants against excessive or oppressive economic liability. *See Hurtado*, 11 Cal. 3d at 586; *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980). Neither Defendant Bekins nor Defendant Bojszuk were residents of Nevada; Plaintiffs thus contend that Nevada has no interest in curtailing Plaintiffs' potential recovery of damages. (*See* Doc. 31, 5:18-6:7; Doc. 35, 3:11-28.)

Defendants contend that the jurisdiction where the injury occurred has a strong interest in applying its laws and that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Hernandez*, 102 Cal. App. 3d at 802. Further, California courts have applied a foreign state's law in California even though neither the defendant nor the plaintiff resided in that state. *See McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 102 (2010). Defendants thus assert that Nevada's law should apply here.

**a.    Applicable California Cases**

As this Court sits in California and must apply California choice of law rules, the Court looks to relevant California cases for guidance. The case of *Reich v. Purcell*, 67 Cal. 2d 551, 555 (1967) developed California's approach to choice of law cases by "conclud[ing] that the law of the place of the wrong is not necessarily the applicable law for all tort actions brought in the courts of this state." Instead, the court should perform "an analysis of the respective interests of the states involved (governmental interest approach)." *Hurtado*, 11 Cal. 3d at 579 (explaining the holding in *Reich*, 67 Cal. 2d at 554.) As such, the fact that an accident occurred in a foreign state does not necessarily establish that the laws of that state should apply.

In *Reich*, 67 Cal. 2d 551, Ohio residents sought to recover in a wrongful death action and injury resulting from an automobile collision in Missouri with an automobile owned and operated by the defendant who was a California resident. *Id.* at 552. The surviving heirs and plaintiffs moved to California after the accident. *Id*. Missouri law had a limitation on the maximum amount of recoverable damages, while neither Ohio nor California limited recovery. *Id*. The court found that Ohio law, which was the law of the state where the plaintiffs resided at the time of the accident, was the applicable law, and not the law of Missouri, where the accident took place. *Id*. at 554-57. Further, the court determined that California had no interest in applying its law on behalf of plaintiffs since plaintiffs did not reside in California at the time of the accident. *Id*. at 556. Nor did California have an interest in applying its law on behalf of defendants, since California had no limitation as to damages and thus no interest in limiting damages. *Id*.

The court found that the law of Missouri, where the accident occurred, was not applicable. The court determined that, although Missouri had a legitimate concern regarding conduct within its borders, "[l]imitations of damages for wrongful death, however, have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated. The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there." *Id*. The court found that "Missouri's limitation on damages . . . operates to avoid the imposition of excessive financial burdens on [defendants]. That concern is . . . primarily local and we fail to perceive any substantial interest Missouri might have in extending the benefits of its limitation of damages to travelers from states having no similar limitation." *Id*. The court concluded that the "[d]efendant's liability should not be limited when no party to the action is from a state limiting liability. . ." *Id*. Accordingly, the court held that Ohio's interests in affording full recovery of damages to injured parties and because it was where the plaintiffs had resided at the time of the accident made Ohio law the appropriate choice of law. *Id*. at 557.

Relying on *Reich*, the court in *Hurtado*, 11 Cal. 3d 574, found that "a state's interest in limiting recovery in wrongful death actions is in protecting resident defendants from excessive financial burdens." *Hurtado*, 11 Cal. 3d at 586. In *Hurtado*, a Mexican national was killed in an automobile accident in California by a California defendant. The Mexican national's heirs were also

9

Mexican nationals, and Mexico imposed a monetary limitation on recoverable damages in wrongful death cases that conflicted with California's law that had no such limitation. The court found that "[t]he interest of a state in a tort rule limiting damages for wrongful death is to protect defendants from excessive financial burdens or exaggerated claims." *Id*. at 580-81. Thus, since there was no such limitation in California law, the court determined that California law should apply since it allowed greater recovery of damages. *Id*. at 586-87. The court found that "Mexico has no interest in applying its limitation of damages in wrongful death actions to nonresident defendants or in denying full recovery to its resident plaintiffs." *Id*. at 586-87.

*Reich* and *Hurtado* show that California courts are reluctant to impose foreign laws that restrict a plaintiff's ability to recover damages unless the defendants are residents of, or connected to, the foreign state where such limitations apply. Here, Defendants are not residents of Nevada and have not shown any connection to the state of Nevada other than the occurrence of the accident in that state. While Defendants rightly note that California has applied the law of foreign jurisdictions that have greater limitations than California law, these cases have pertained to the issue of the defendant's liability concerning the underlying wrong and not to the issue of the plaintiff's recovery of damages from that wrong. Further, where California courts have determined the law of the foreign jurisdiction applies, the defendants were found to have had connections to those foreign states.

For example, in *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157 (1978), a California corporation sued a Delaware corporation that was doing business in Louisiana for negligently injuring the plaintiff's "key employee" (a vice president) while he was in Louisiana meeting with the defendant's personnel. *Id*. at 160. There was a conflict between Louisiana and California law, because Louisiana law did not permit "key employee" suits, while California law allowed such suits at the time. *Id.* at 162. The court agreed that Louisiana law should apply, finding:

> The accident in question occurred within Louisiana's borders; although the law of the place of the wrong is not necessarily the applicable law for all tort actions [citing *Reich*, 67 Cal.2d at 555], the situs of the injury remains a relevant consideration. At the heart of Louisiana's denial of liability lies the vital interest in promoting freedom of investment and enterprise within Louisiana's borders, among investors incorporated both in Louisiana and elsewhere. *The imposition of liability on defendant, therefore, would strike at the essence of a compelling Louisiana law*.

10

*Id*. at 168 (emphasis added). Thus, in *Offshore Rental*, the question before the court concerned the defendant's liability under the laws, not the question of the extent of the recovery of damages by plaintiff. *See id.* Further, the defendant in *Offshore Rental* had a place of business in Louisiana, and was thus connected to the foreign state whose law was applied.

In *Castro*, 154 Cal. App. 4th 1162, the court determined that the law of a foreign state had a greater interest over California law when the foreign state's law limited the defendant's liability. The plaintiff was a California resident who was injured in an automobile accident in Alabama by a driver who had leased a truck in Alabama from the defendant Budget Rent-A-Car. *Id*. at 1167-68. Under Alabama law, the defendant was not vicariously liable for the negligence of the permissive user of its motor vehicle; this law conflicted with California law. *Id*. at 1168. The court found that Alabama had developed a law that "imposes liability on the actively negligent permissive user, rather than the owner of the vehicle. In doing so, that law advances a fundamental state interest in deterring negligent driving on Alabama's roadways by holding negligent drivers liable for their conduct, while at the same time shielding non-culpable vehicle owners from any of the financial burdens caused by actively negligent drivers." *Id*. at 1181.

As such, Alabama had a specific interest in protecting rental car companies from permissive user liability claims for transactions that were undertaken in Alabama, and had an interest in holding negligent drivers liable for their conduct. The court further determined that, while California had an interest "to ensure that California residents injured in traffic accidents in other states would be compensated for their injuries and not become dependent on the resources of California," that interest was "not sufficient to reallocate Alabama's and California's 'respective spheres of law making influence.'" *Id.* at 1182 (citing *Offshore Rental*, 22 Cal. 3d at 165). Accordingly, the court held that "Alabama's interest in *allocating liability* and deterring negligent driving within its borders would be more impaired by the application of California's permissive user statute than would California's interests if Alabama law is applied." *Id*. (emphasis added). Thus, in *Castro*, the court found the law of the foreign state applied to the issue of defendant's liability. Additionally, the defendant had a connection to the foreign state, which was the place where the defendant was conducting business and had leased its vehicle to the driver involved in the accident.

Lastly, *McCann*, 48 Cal.4th 68, involved a plaintiff who, in 1957, was an Oklahoma resident and was allegedly exposed to asbestos while installing a boiler in Oklahoma for an oil refinery. *Id*. at 74. The defendant Foster Wheeler, headquartered in New York

> specially designed, manufactured, and provided advice regarding the installation of a very large boiler at an oil refinery in Oklahoma in 1957. At the time the boiler was being installed at the Oklahoma refinery, plaintiff, then an Oklahoma resident and a newly hired engineering sales trainee employed by the construction company that was installing the boiler, allegedly was exposed to asbestos at various times over a two-week period while he observed the application of asbestos insulation to the boiler by an independent insulation contractor.

*Id*. Eighteen years later, in 1975, the plaintiff moved to California, where he continued to reside through the time of the litigation. *Id*. In 2005, the plaintiff was diagnosed with mesothelioma due to his exposure to asbestos. *Id*. A conflict arose between Oklahoma's "statute of repose that required any cause of action against a designer or constructor of an improvement to real property to be filed within 10 years of the substantial completion of the improvement," and California's statute of limitations. *Id*. at 74-75.

Although plaintiff resided in California and the defendant was headquartered in New York, the court held that Oklahoma law applied. *Id*. at 76. The court found that "Oklahoma's interest in the application of its statute of repose applies as fully to out-of-state companies that design and construct improvements to real property in Oklahoma as to Oklahoma companies that design and construct such improvements." *Id*. The court determined that:

> the displacement of Oklahoma law limiting liability for conduct engaged in within Oklahoma, in favor of the law of a jurisdiction to which a plaintiff subsequently moved, would—notwithstanding the innocent motivation of the move—nonetheless significantly impair the interest of Oklahoma served by the statute of repose. If Oklahoma's statute were not to be applied because plaintiff had moved to a state with a different and less "business-friendly" law, Oklahoma could not provide any reasonable assurance—either to out-of-state companies or to Oklahoma businesses—that the time limitation embodied in its statute would operate to protect such businesses in the future. Because a commercial entity protected by the Oklahoma statute of repose has no way of knowing or controlling where a potential plaintiff may move in the future, subjecting such a defendant to a different rule of law based upon the law of a state to which a potential plaintiff ultimately may move would significantly undermine Oklahoma's interest in establishing a reliable rule of law governing a business's potential liability for conduct undertaken in Oklahoma.

*Id*. The court thus found that Oklahoma had a greater interest in having its law applied, since the defendant, having conducted business in the state of Oklahoma, was protected from liability under Oklahoma law.

The foregoing discussion of *Offshore Rental*, *Castro*, and *McCann* thus exemplifies that where California courts have applied the law of a foreign jurisdiction, they have done so where there has been some demonstrable connection or nexus between the location of the wrong and at least one of the parties, and where the foreign law involves a limitation as to a defendant's liability as opposed to a limitation on the amount that plaintiffs could recover in damages.

### b. California's Interests in Allowing Pure Comparative Fault Damages Outweighs Nevada's Interests in Limiting Comparative Fault Damages

Although Defendants contend that Nevada, as the place of the accident, has a presumptive interest in controlling the conduct of persons using its roadways, Defendants have not shown that they had any connection or nexus with the state of Nevada other than driving through the state. Further, Defendants have not shown that the application of Nevada law would impact the determination of liability based on the conduct of any of the parties. (*See* Doc. 34.) Instead, the conflict of the comparative fault laws of Nevada and California impact Plaintiffs' potential recovery of damages for which Defendants may be responsible. If Defendants are found to be less than 50 percent at fault for causing the accident, then under Nevada law Plaintiffs cannot recover any damages. *See* Nev. Rev. Stat. § 41.141. However, under California law, even if Defendants are less than 50 percent at fault for the accident, they are still responsible for damages based on an apportionment of their fault. *See Li*, 13 Cal. 3d at 813.

As noted above, California courts, when determining whether a foreign jurisdiction's stricter recovery rules should apply over California's more liberal rule, have held that a jurisdiction's only interest in having its damages limitation rules applied is to protect its resident defendants from excessive financial burdens or exaggerated claims, or to protect defendants who have a connection to the foreign state. *See Hurtado*, 11 Cal. 3d at 580-81; *Reich*, 67 Cal. 2d at 556, *Offshore Rental*, 22 Cal. 3d at 168; *Castr*o, 154 Cal. App. 4th at 1181-82; *McCann*, 48 Cal. 4th at 76.

Further, federal courts determining California choice of law disputes have also noted the distinction between applicable law concerning liability limitations and damages limitations. In *Marsh*, 805 F. Supp. 1493, the district court found that California courts had determined that "[d]amages limitations are intended to protect defendants from large verdicts, not to limit the compensation of plaintiffs." *Id*. at 1498 (citation and quotation marks omitted). Accordingly, since none of the defendants in *Marsh* were residents of the foreign state in which they were seeking to impose a conflicting law to limit damages, the foreign state had "absolutely no interest in having its damages rules applied to them." *Id*. at 1499. In contrast, in *Abogados*, 223 F.3d 932, the case did "not involve a damages limitation rule," but instead involved the issue of Mexico's tort liability. *Id*. at 935-36. The court's decision finding that the foreign state had a significant interest in applying its law to the action was "designed both to protect potential defendants-including foreign defendants who might otherwise avoid doing business in Mexico-from *liability* for conduct that Mexico does not consider wrongful, and to limit plaintiffs from recovering even if such conduct damages them." *Id*. at 936 (emphasis added). Likewise in *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774, 2010 WL 3034060, at *13 (C.D. Cal. July 30, 2010), the court found that "California decisions have adopted a restrained view of the scope or reach of California law with regard to the *imposition of liability* for conduct that occurs in another jurisdiction and that would not subject the defendant to liability under the law of the other jurisdiction." (citation omitted) (emphasis added).

Here, Defendants are seeking to limit the extent of the damages that they may owe to Plaintiffs, and are not seeking to apply laws that would impact their potential liability concerning the cause of the accident. The California and Nevada laws disputed by the parties would not determine which parties were more liable for causing the accident, but could instead potentially impact the amount that Plaintiffs could recover in damages. Under California law, Plaintiffs could potentially recover damages from Defendants even if Plaintiffs were more than 50 percent responsible for causing the accident, while under Nevada law Plaintiffs could only recover damages if they were less than 50 percent responsible.

While Nevada has an interest in limiting the recovery of damages for accidents occurring on its roadways, Nevada's interest in this action is limited because Defendants are not residents of

Nevada, nor have they shown any connection or nexus with Nevada, other than the fact that Nevada is the place of the accident. "Limitations of damages . . . have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated. The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there." *Reich*, 67 Cal. 2d at 552. As such, since the connection between Defendants and Nevada is so limited, Nevada's interests are minimal.

However, California's interest in protecting the tort recovery of damages of its residents would be severely impaired if California law did not apply. California has an interest in ensuring that its laws concerning the potential recovery by Plaintiffs of damages are applied, and that its residents are compensated for their injuries and do not become dependent on the resources of California for necessary medical, disability, and unemployment benefits. Thus, California law should be applied in this action as to the issue of comparative fault.

### IV.   CONCLUSION AND RECOMMENDATION

Accordingly, the Court RECOMMENDS that:

1. The Wrights' motion to establish California law as applicable should be GRANTED as to the issue of comparative fault only; and
2. The Declaration of Roger A. Dreyer and supporting exhibits (Doc. 32) should be STRICKEN.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may

///

///

///

waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     October 19, 2012**                    /s/ Sheila K. Oberto
                                                                         UNITED STATES MAGISTRATE JUDGE